**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:26-cr-0001** |
| | ) | |
| **ERVIN NOEL, JR.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**APPEARANCES:**

**ADAM A. SLEEPER, UNITED STATES ATTORNEY**
**MARTIN FORREST, ASSISTANT UNITED STATES ATTORNEY**
OFFICE OF THE UNITED STATES ATTORNEY
ST. CROIX, U.S. VIRGIN ISLANDS
*FOR THE UNITED STATES OF AMERICA*

**COLEY O. REYNOLDS, ESQ.**
REYNOLD FIRM, LLC
PHILADELPHIA, PA
*FOR DEFENDANT ERVIN NOEL, JR.*

**MEMORANDUM OPINION**

***Robert A. Molloy, Chief Judge***

**THIS MATTER** comes before the Court on Defendant Ervin Noel, Jr.'s ("Noel") Motion to Suppress Statement, filed on June 10, 2026. (Dkt. No. 60.) Noel seeks to suppress statements he made to law enforcement officers on May 9, 2025. The United States ("Government") filed an opposition on June 26, 2026. (Dkt. No. 65.) The Court held an evidentiary hearing on October 19, 2026. During the hearing, the Court heard testimony from Detective Salim Ross ("Detective Ross") and Ms. Omolara Simmonds ("Simmonds"). For the reasons stated below, the motion will be granted, in part, and denied, in part.

I.

The Court makes the following factual findings based on the evidence and stipulated facts presented at the evidentiary hearing held on October 19, 2026.

On May 6, 2025, the Superior Court of the Virgin Islands issued a warrant to arrest Noel. In executing the warrant on May 9, 2025, officers from the Virgin Islands Police Department ("VIPD") traffic stopped a vehicle in Frederiksted, St. Croix, in which Noel was an occupant sitting in the front passenger seat. The vehicle was being operated by Simmonds – the mother of a friend of Noel. Simmonds testified that Noel had stayed at her home for seven days before the arrest and that he was sick the entire time. Simmonds further testified that, at the time the police stopped the vehicle, she was transporting Noel to the hospital because he had been sick for several days and was not feeling well. The officers arrested Noel on the outstanding arrest warrant and transported him to the police station for booking. The parties stipulated that during transport to the police station, Noel vomited in the police vehicle.

After the officers arrested Noel, the officers impounded the vehicle and later conducted a search of the interior of the vehicle. During this search, the officers discovered a firearm under the front passenger seat. During booking at the police station and before the issuance of any *Miranda* warnings, Detective Ross informed Noel of the discovery of the firearm and asked who the firearm belonged to. Detective Ross also informed Noel that if no one claimed ownership of the firearm, then both Noel and Simmonds would be arrested and charged with possession of the firearm. Noel responded that the firearm was his. Detective

Ross further testified that this conversation regarding the discovery of the weapon was unrecorded and there was no reason that he did not start the camera earlier.

After the unrecorded conversation took place, Detective Ross advised Noel of his *Miranda* rights. Noel signed and dated a *Miranda* waiver form. *See* Gov't Ex. 2 – Warning and Consent to Speak Form. Underneath Noel's signature and the date, there is a handwritten time of 1:57 p.m. Noel then answered questions posed by Detective Ross. The recorded interview lasted approximately four minutes ending around 2:02 p.m. *See* Gov't Ex. 3. During the interview, Noel provided a description of the firearm, claimed ownership of the firearm, informed the officers that he placed the firearm in the vehicle, and indicated how he came into possession of the firearm. However, before providing these statements, Noel informed the officers that he wasn't feeling well, that his "belly was hurting," and that he had been on his way to the hospital when he was stopped and arrested. Detective Ross testified that Noel did not ask for medical attention and did not indicate that he could not proceed with the interview. However, Detective Ross also testified that, pursuant to the VIPD medical policy, if officers are aware of a person's medical needs or if that person requests medical attention, then officers will address that first before proceeding with their other duties, including questioning. According to Detective Ross, he only found out after the interview that Noel vomited in the police vehicle while being transported to the police station. The parties stipulated that after the interview was conducted, the officers transported Noel to the hospital at approximately 2:50 p.m. and returned with Noel to the police station around 4:50 p.m.

II.

The Fifth Amendment to the U.S. Constitution provides that "No person . . . shall be compelled in any criminal case to be a witness against himself." To effectuate a person's Fifth Amendment rights, the Supreme Court has made it emphatically clear that the government may not introduce statements made by an individual who is subject to "custodial interrogation" unless he first has been given his *Miranda* warnings informing him of certain rights. *Miranda v. Arizona*, 384 U.S. 436, 445 (1966). However, a person may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly, and intelligently." *United States v. Velasquez*, 885 F.2d 1076, 1084 (3d Cir. 1989). The Government bears the burden of establishing by a preponderance of the evidence that the waiver was made knowingly, voluntarily, and intelligently.

### *A. Noel's Statements to Law Enforcement Officer Prior to Being Mirandized will be Suppressed*

While not explicitly addressed by either party, the Court will first consider whether Noel's statements made to Detective Ross before being Mirandized are admissible. Before subjecting a person who is in "custody" to police interrogation, the officers must first advise the accused of their constitutional rights, to wit: (1) to remain silent; (2) to appointed and present counsel; and (3) that any statements they make to law enforcement may be used *against them* in court proceedings.[1] *Miranda*, 384 U.S. at 478-79. A person is "in custody" for purposes of *Miranda* when "there is a 'formal arrest or restraint on freedom of movement'

[1] The Supreme Court has opined that a rigid "incantation" of these warnings is not required, but the warning must effectively convey to the accused what his rights are. *California v. Prysock*, 453 U.S. 355, 359-61 (1981).

of the degree associated with a formal arrest." *United States v. Leese*, 176 F.3d 740, 743 (3d Cir. 1999) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). An "interrogation" occurs when there is "express questioning or its functional equivalent." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

After VIPD officers informed Detective Ross that they discovered a firearm under the passenger seat of the vehicle, Detective Ross began to question Noel regarding ownership of the firearm. This questioning occurred after the officers arrested Noel but prior to Detective Ross informing Noel of his *Miranda* rights. Noel was in police custody at the time he was first questioned by Detective Ross. He was arrested pursuant to an arrest warrant and was in handcuffs while being booked at the police station. It is also without question that he was being interrogated. He was asked a question by Detective Ross concerning the ownership of a firearm. Thus, this Court has little trouble in finding that Noel was subject to custodial interrogation before being Mirandized. As a result, those pre-Miranda statements will be suppressed. *See United States v. Jacobs*, 431 F.3d 99, 104 (3d Cir. 2005) ("If *Miranda* warnings are not given before a person in custody is questioned, evidence resulting from the questioning must be suppressed.") (internal quotations omitted).

***B. Noel's Waiver of His Rights Under Miranda Was Knowingly, Voluntarily, and Intelligently Made***

Next, the Court will address whether Noel's waiver of his *Miranda* rights was knowingly, voluntarily, and intelligently made. A defendant's waiver of his *Miranda* rights is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Rought*, 11 F.4th 178, 187 (3d Cir. 2021) (citations omitted). "A waiver is knowing and intelligent if made with a full awareness both of the

nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. (internal quotations omitted).

Detective Ross testified that he read the *Miranda* warnings from the statement of rights form to Noel. *See* Gov't Ex. 2. Noel had a copy of the form in front of him and read along as Ross read the rights to him. The form contained the rights that an individual must be aware of consistent with the Fifth Amendment, including the right to remain silent and the right to have an attorney present during any questioning. The form also contained language under the heading "WAIVER" which reads:

> I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or force of any kin[d] has been used against me. I hereby voluntarily and intentionally waive my rights and I am willing to make a statement and answer questions.

Gov't Ex. 2.

Detective Ross testified that Noel acknowledged and appeared to understand. This acquiescence of acknowledgment was demonstrated by Noel looking at the document ostensibly reading it line-by-line. Noel then signed the form and proceeded to answer questions posed by Detective Ross. There is nothing on this record that would warrant a conclusion that Noel did not understand his rights. Thus, the Court concludes that Noel's waiver of his *Miranda* rights was knowingly, voluntarily and intelligently made.

### *C. Noel's Statements were Voluntary*

Even though the Court finds that there is a valid *Miranda* waiver present here, the Court must still consider whether Noel's statements were voluntary. A statement is given voluntarily if, when viewed in the totality of the circumstances, it is the product of an essentially free and unconstrained choice by its maker. *Schneckloth v. Bustamonte*, 412 U.S.

218, 225 (1973); *United States v. Swint*, 15 F.3d 286, 289 (3d Cir. 1994). "[C]ourts look to the totality of circumstances to determine whether a confession was voluntary." *Withrow v. Williams*, 507 U.S. 608, 693 (1993). This consideration includes: (1) the length and location of the interrogation; (2) the defendant's maturity, physical condition, mental health, and level of education; and (3) whether *Miranda* warnings were given. *Swint*, 15 F.3d at 289. However, "[a] necessary predicate to a finding of involuntariness is coercive police activity." *Jacobs*, 431 F.3d at 108-09. Again, the Government bears the burden of establishing by a preponderance of the evidence that the challenged statement was voluntary. *Id.*

Based on the totality of the circumstances, the Court concludes that Noel's statements were voluntary. The interview was short and lasted about four minutes. The tone between the officers and Noel was calm and conversational. Noel did not appear distressed. Although Noel indicated that he was not feeling well, there is no sign that he was experiencing any symptoms of an illness during the interview. Noel appeared relaxed and alert and responded to questions coherently. Nor is there any indication that the officers used any coercive tactics in obtaining the statements from Noel. Finally, Noel gave his statements after *Miranda* warnings were given.

Noel contends that his statements were not voluntary for two primary reasons: (1) he was experiencing an illness at the time he made those statements; and (2) the officers advised him that if no one assumes ownership of the firearm, that both him and Simmonds would be arrested. Neither argument provides Noel with any relief.

The record demonstrates that Noel was experiencing symptoms of some unknown illness before providing a statement to law enforcement. The Government does not challenge

this. In fact, the parties stipulated that Noel vomited in the police car on the way to the police station. The parties also stipulated that the officers took Noel to the hospital after the interview. However, simply being ill does not negate the voluntariness of his statements.

Detective Ross testified that he did not know that Noel threw up in the police vehicle before booking. Moreover, based on Noel's demeanor during the interview, as shown by the video, it does not appear that he was suffering or displaying any symptoms of a medical condition or illness. As mentioned above, Noel appeared calm and relaxed and responded coherently to all questions asked. No evidence suggests that the officers engaged in any coercive tactics or exploited Noel's medical condition. *See, e.g.*, *Brown v. Jackson*, 501 F.App'x 376, 369 (6th Cir. 2012) (finding confession voluntary where defendant held for 51 hours and suffered from flu-like symptoms before signing confession but officers observed no obvious signs of illness on date confession was signed). On the contrary, the evidence here strongly suggests that Noel's statements, given over a 4-minute period, were the "product of a free and deliberate choice rather than intimidation, coercion, or deception." *Rought*, 11 F.4th at 187.

With regards to Detective Ross informing Noel that if no one claimed ownership of the firearm, that both he and Simmonds would be arrested and charged, the Court finds that those statements did not rise to any level of intimidation, coercion, or improper police tactic to render Noel's statements involuntary. An officer informing a suspect of the potential consequences of a criminal investigation is not coercive behavior that would render a suspect's statements involuntary. *See United States v. Ingino*, 845 F. App'x 135, 139 (3d Cir. 2021) (opining "[i]t is appropriate for an investigator to advise a suspect of the potential

course and consequences of a criminal investigation.") (citing *United States v. Czichray*, 378 F.3d 822, 829 (8th Cir. 2004)); *see also United States v. Ortiz*, No. 3:22-cr-0020, 2024 U.S. Dist. LEXIS 65447, at *12 (D.V.I. Apr. 10, 2024) (opining "it is not coercive for officers to accurately relay the potential outcomes surrounding a case, even when those outcomes involve family members."); *United States v. Henderson*, No. CRIM.1:06-CR-0234, 2010 U.S. Dist. LEXIS 38147, at *4 (M.D. Pa. Apr. 19, 2010), *aff'd*, 437 F. App'x 96 (3d Cir. 2011) (explaining to a suspect that, if she were arrested, her children would be without guardians and agents would have to notify child protective services is not coercive). As stated by this Court in *Ortiz*, "[w]hile the Third Circuit has not discussed whether threats to arrest family members constitute coercion, 'courts have generally agreed that if there is probable cause to arrest the suspect's family member, the tactic is not coercive enough to render a confession involuntary.'" *Ortiz*, 2024 U.S. Dist. LEXIS 65447, at 12. Since the firearm was located in a vehicle operated by Simmonds and underneath a seat where Noel was seated, the officers acted appropriately to inform Noel of the potential that Simmonds could be arrested for possession of the firearm. The Court finds that the officers notifying Noel of this potential outcome was not an improper police tactic or conduct rising to the level of coercing Noel into an involuntary confession.[2]

---

[2] To the extent that Noel argues that his unwarned pre-Miranda statements rendered his post-Miranda statements involuntary, the Court disagrees. In *Oregon v. Elstad*, 470 U.S. 298 (1985), the Supreme Court held that "absent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion." *Id.* at 314. Further, "[a] subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement." *Id.* Here, Noel's subsequent choice to waive his *Miranda* rights after he was provided with *Miranda* warnings dissipated any coercive impact of his earlier statements. *See United States v. Johnson*, 816 F.2d 918, 922-923 (3d Cir. 1987). As articulated in this opinion, the record does not support the fact that the officers engaged in any improper tactics or otherwise coerced Noel is providing his initial statements. The Court finds that both Noel's pre-Miranda and post-Miranda statements were voluntary.

III.

For the above reasons, the Court concludes that Noel knowingly, voluntarily, and intelligently waived his *Miranda* rights. The Court also concludes that his statements made after he was Mirandized were voluntary. However, any statements made by Noel before being Mirandized are inadmissible. An appropriate Order follows.

**Dated:** October 30, 2026

*/s/ Robert A. Molloy*
**ROBERT A. MOLLOY**
**CHIEF JUDGE**